**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC D. FREED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| NEIL FRIEDMAN, C.P.A., P.C., doing business as | ) | |
| MICHAEL SILVER AND CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR NEGLIGENCE AND BREACH OF FIDUCIARY DUTIES

Plaintiff, Eric D. Freed, individually, for his Complaint for Negligence and Breach of Fiduciary Duties against Neil Friedman, C.P.A., P.C., doing business as Michael Silver & Co., states as follows:

### Nature Of The Case

1.      This is an action by Plaintiff Eric D. Freed ("Freed") to recover for the damages he suffered as a result of the breaches of duties owed to him by Defendant Neil Friedman, C.P.A., P.C. in connection with the accounting and tax services provided by the Defendant to and on behalf of Freed. Through this action, Freed seeks to recover damages for the losses he has incurred as a direct result of Defendant's negligence and resulting from its breaches of the fiduciary duties it owed to him in connection with the professional accounting and tax services it was engaged to provide for his benefit, and through its fraud.

### The Parties And Basis Of Jurisdiction

2.      Plaintiff Freed is an individual domiciled in the State of Florida and is a citizen of Florida.

3.    Defendant Neil Friedman, C.P.A., P.C. operates under the assumed name of Michael Silver & Company ("Michael Silver & Co.").

4.    Michael Silver & Co. is an Illinois professional corporation with its principal place of business in Cook County, Illinois. Its principal place of business is at 5750 Old Orchard Road, Suite 200, Skokie, Illinois.

5.    Michael Silver & Co. holds itself out as a professional corporation that specializes in providing accounting services and tax services in accordance with the standard of care applicable to the accounting profession.

6.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of $75,000.

7.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(a). Defendant resides within this judicial district, and a substantial part of the events or omissions giving rise to Freed's claims occurred in this District. Defendant is subject to personal jurisdiction in the Northern District of Illinois.

**Allegations Common To All Counts**

8.    In December 1999, Freed and Paul M. Weiss ("Weiss") formed an Illinois limited liability company known during all relevant times as Freed & Weiss LLC, designated as a "manager managed" limited liability company (hereinafter "Freed & Weiss," "LLC," or the "Firm").

9.    Freed & Weiss filed articles of organization with the Illinois Secretary of State in December 1999, identifying Eric Freed and Paul Weiss as the two members and managers of the Firm.

10.     At all times material to this dispute, Freed & Weiss operated as a law firm representing plaintiffs in class-action lawsuits for which it received compensation on a contingent fee basis.

11.     Freed was a member of Freed & Weiss from its founding in December 1999 until August 21, 2012.

12.     Freed was a manager of Freed & Weiss from its founding in December 1999 until August 21, 2012.

13.     In August 7, 2000, Freed and Weiss entered into a document captioned "Partnership Agreement." A copy of the "Partnership Agreement" (and hereinafter referenced as the "Partnership Agreement") is attached as **Exhibit 1**.

14.     At the time Freed and Weiss each executed the Partnership Agreement in August 2000, Freed and Weiss were the only members of the Firm and were the only managers of the Firm.

15.     The Partnership Agreement memorialized the agreement between the members and managers of Freed & Weiss concerning, among other things, the terms of loan repayments of loans made by Freed to Weiss, the terms repayment of loans made by either member to the Firm, as well as the distribution of profits of Freed & Weiss to its members.

16.     Freed financed the operations of Freed & Weiss by making loans directly to the Firm.

17.     Pursuant to paragraph 4 of Partnership Agreement, any funds advanced by either Freed or Weiss to the Firm were to be fully repaid prior to any other disbursement, except for the payment of a salary to Weiss as provided for in paragraph 5 of Partnership Agreement.

18.     Between August 2000 and March 2011, Freed loaned more than $14,000,000 to

Freed & Weiss.  During the same time period, Weiss made no loans to the firm.

19.     Under paragraph 9 of Partnership Agreement, any litigation expenses recovered

by the Firm in connection with a case in which it had been engaged would first be used to repay

all expenses advanced by Freed or Weiss to fund the case.  Specifically, paragraph 9 of the

Partnership Agreement provided:

> Any case (litigation) expense recovery received by Freed & Weiss LLC from a case shall
> be used to repay Eric D. Freed and/or Paul M. Weiss the litigation expenses advanced on
> behalf of Freed & Weiss LLC in said case, on a basis proportionate to the relative value
> of the funds (expenses) advanced by Eric D. Freed and/or Paul M. Weiss in the event the
> recovery is insufficient to repay the actual dollar amounts advanced.  Any deficiency or
> deficiencies with respect to the actual dollar amounts advanced will carryover as an
> advance of funds (expenses) by Eric. D. Freed and/or Paul M. Weiss to be recovered by
> the respective party or parties under paragraph 10.

20.     Under paragraph 10 of the Partnership Agreement, any fees recovered by Freed &

Weiss were required be used to repay all expenses advanced by Freed or Weiss to fund the

operations of  LLC before the funds could be used for any other purpose.  Specifically, paragraph

10 of the Partnership Agreement provides:

> Any fee received by Freed & Weiss LLC in a case shall be used first to repay any
> and all expenses advanced on behalf of Freed & Weiss LLC for its normal and
> ordinary operations by Eric D. Freed and/or Paul M. Weiss, on a basis
> proportionate to the relative value of the funds (expenses) advanced by Eric D.
> Freed and/or Paul M. Weiss in the event the case fee is insufficient to repay the
> actual dollar amounts advanced.  Should the fee(s) be insufficient to cover the
> actual dollar amounts advanced by Eric D. Freed and/or Paul M. Weiss to Freed
> and Weiss LLC, any deficiency will carryover as an advance of funds (expenses)
> to be recovered by the respective party or parties making the advance against the
> next fee(s) received by Freed & Weiss LLC.

21.     Pursuant to paragraph 7 of Partnership Agreement, and as limited by the terms of

the Illinois Limited Liability Act (the "Act") and the Partnership Agreement, 53% of all gross

4

revenue received by LLC, less expenses incurred by it, was to be paid to Freed and 47% of all gross revenue received by LLC, less expenses, was to be paid to Weiss.

22.     Pursuant to paragraph 7 of Partnership Agreement, neither member of the Firm was entitled to any interim distributions from Freed & Weiss until the terms of paragraph 10 and 12 of Partnership Agreement were met.  Specifically, paragraph 7 of the Partnership Agreement provides:  "All gross revenues received by Freed & Weiss LLC less expenses repaid are to be split (the profits), fifty three percent (53%) to Eric D. Freed and forty seven percent (47%) percent [sic] to Paul M. Weiss."

23.     Paragraph 12 expressly conditioned distributions to Weiss, to the extent that interim disbursements were otherwise available under paragraphs 13 and 14 of Partnership Agreement, and properly payable under the Act, on repayment of monies loaned by Freed to Weiss in full, or on a written consent signed by Freed to permit such premature and undue distributions.

24.     Freed made multiple loans to Weiss under the terms of paragraph 12 of Partnership Agreement, including a $50,000 loan to Weiss.

25.     At all relevant times, Ronald Weiss, who is Paul Weiss' father, provided accounting services to Freed, both individually and as a manager of LLC, throughout the period from 2000 through 2012.

26.     In connection with his engagement, Ronald Weiss has complete access to the Firm's books and records, including the Partnership Agreement.

27.     Freed provided Ronald Weiss with documentation of the loans that he made to the Firm as well as his loans to Paul Weiss.

28.     In or about 2002, Ronald Weiss' accounting practice was merged into Michael Silver & Co.

29.     Following this merger, Michael Silver & Co. was engaged by and on behalf of Freed and the Firm to enable Freed to know his property and tax obligations and the Firm's managers to perform their responsibilities.

30.     As part of merger, Michael Silver & Co. received all of the accounting records pertaining to the professional services that Ronald Weiss provided to or on behalf of Freed individually and as manager of the Firm prior to 2006.

31.     Michael Silver & Co. was also engaged to provide compilation financial statements in accordance with Statements on Standards for Accounting and Review Services issued by the AICPA, including the compilation of financial statements of Freed & Weiss, including statements of assets, statements of liabilities, statements of member's equity, and prepare the related statements of revenues and expenses.

32.     Michael Silver & Co. was engaged to perform these services to enable Freed & Weiss' managers to perform their responsibilities.

33.     Michael Silver & Co. was also engaged to perform accounting services and tax services on behalf of Freed & Weiss, including preparing quarterly payroll tax returns, annual W-2s, 940 payroll tax returns, and federal and state income tax returns.

34.     In connection with its engagement, Michael Silver & Co. was give complete access to the Firm's books and records, including the Partnership Agreement, and documentation regarding the loans that Freed made to Paul Weiss and to the Firm.

35.     Michael Silver & Co. agreed that the services that it undertook to perform on behalf of Freed individually and as a manager of LLC would be performed in accordance with

the AICPA Code of Professional conduct as well as any and all other applicable professional standards.

36.     AICPA Code of Professional Conduct Rule 201 provides:

A member shall comply with the following standards and with any interpretations thereof by bodies designated by Counsel.

A.  Professional Competence.  Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.

B.  Due Professional Care.  Exercise due professional care in the performance of professional services.

C.  Planning and Supervision.  Adequately plan and supervise the performance of professional services.

D.  Sufficient Relevant Data.  Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

37.     During all relevant times that it was representing Freed, Michael Silver & Co. also purported to provide professional services to Paul Weiss.

38.     Michael Silver & Co. failed to notify Freed at any time of the conflict inherent in its concurrent engagement on behalf of Freed and on behalf of Weiss.  In particular, Michael Silver & Co. failed to disclose to Freed that it was providing communications that it received in confidence from him to Paul Weiss and assisting Paul Weiss in his effort to divest Freed of his rights and property interests as a member and manager of Freed & Weiss.

39.     As the accountants for Freed and the Firm, Michael Silver & Co. owed a duty of loyalty and care to Freed, individually and as a manager of the Firm, and a duty to perform its professional accounting services with a reasonable degree of care and competence, in accordance with the applicable professional standards, with the Generally Accepted Accounting Principles ("GAAP") and with the standards of the AICPA.

40.     On August 21, 2012, Freed gave notice of his express will to withdraw from Freed & Weiss by providing a letter to the Firm notifying it of his express intent to withdraw effective the date of his notice.

41.     Freed's August 21, 2012 letter also demanded purchase by LLC of Freed's distributional interest.

42.     As of the date of Freed's dissociation, and to the present date, Freed & Weiss has not repaid the loans that Freed had made to it.

43.     As of the date of Freed's dissociation, Paul Weiss had not repaid the loans that Freed had made to him.

44.     Freed has not released or excused the LLC's obligation to repay the loans that he made to it, or interest on those loans.

45.     Freed has not released or excused Weiss' obligation to repay the loans that Freed made to Weiss, or interest on those loans.

46.     To date, Freed & Weiss has not purchased Freed's distributional interest in the Firm, and failed to even make an offer to purchase Freed's distributional interest.

47.     While Weiss has asserted in litigation that Freed dissociated from Freed & Weiss prior to August 2012, the Firm did not offer to purchase his distributional interest at that disputed prior date, nor does it contend that it ever purchased or offered to purchase his distributional interest.

48.     Michael Silver & Co. continued to communicate with Freed both individually, and in his capacity as a manager of Freed & Weiss, through at least September, 2012.

49.     Michael Silver & Co. performed accounting services on behalf of Freed individually as well as on his behalf as a member and manager of Freed & Weiss through September 2012.

50.     Despite having never financed the Firm's operations, Weiss caused the Firm to make interim distributions to himself or on his behalf in violation of the express terms of paragraph 12 of Partnership Agreement.

51.     Michael Silver & Co. knew or should have known that Weiss received such improper distributions from the Firm.

52.     Michael Silver & Co. failed to advise Freed of such improper distributions. Additionally, Michael Silver & Co. took steps to actively conceal the improper distributions that Weiss caused LLC to pay him or to pay on his behalf from Freed both while Freed was a manager.  Michael Silver & Co. continued to take steps to conceal the improper distributions after the date of Freed's dissociation.

53.     Michael Silver & Co. knew or should have known that at all times since the commencement of its engagement that loans made by Freed to both the Firm and to Weiss remained unpaid.

54.     Michael Silver & Co. failed to properly account for the loans made by Freed to the Firm, or accrue the appropriate interest due thereon.  The loans that Freed made to LLC were not reflected on its books and records as LLC's liabilities.

55.     Michael Silver & Co. took steps to actively conceal from Freed the amounts due and payable to him, including interest, from the Firm and from Weiss.

56.     Notwithstanding the express provisions of the Partnership Agreement to the contrary, Weiss took unauthorized year end distributions despite the fact that there remained

outstanding loans that Freed made to the Firm and to Weiss, notwithstanding Weiss' failure to repay amounts advanced to Weiss.

57.     Michael Silver & Co. knew or should have known that such improper distributions were made to Weiss,

58.     Michael Silver & Co. failed to advise Freed of such improper distributions, and took steps to actively conceal the same from Freed both while he was a manager, and after the date of his dissociation.

59.     Michael Silver & Co. also improperly accrued equity to Weiss even though he had not repaid the loans made to him by Freed that were subject to paragraph 12 of Partnership Agreement and notwithstanding Weiss' failure to repay LLC for the loans he had caused it to make to him.

60.     Michael Silver & Co. failed to communicate to Freed that Weiss received distributions from LLC that did not conform to the requirements of Partnership Agreement.

61.     At various times after Michael Silver & Co. commencd its engagement, Weiss and Ronald Weiss manipulated the Firm's finances to conceal income and profits from Freed, in part, through the artifice of an IOLTA account in which Weiss deposited Freed & Weiss funds rather than funds belonging to its clients.

62.     Michael Silver & Co. knew or should have known that Weiss was wrongfully concealing income and profits from Freed.

63.     Michael Silver & Co. improperly booked advances to Paul Weiss as draws that should have been reflected as a loan from Freed & Weiss to Paul Weiss.

64. Michael Silver & Co. failed to advise Freed of such acts of manipulation and concealment, and took steps to actively conceal the same from Freed both while he was a manager, and after the date of his dissociation.

65. Freed relied on the false and inaccurate records generated by Michael Silver & Co. and provided to him in connections with the decisions he made as a manager of Freed & Weiss.

66. Michael Silver & Co. knew or should have known that Freed would rely on the false and misleading information it provided him to meet his responsibilities as a manager of Freed & Weiss.

67. During its engagement, Michael Silver & Co. learned of various other breaches of fiduciary duties owed to Freed and the Firm committed by Paul Weiss, his wife, Jamie Weiss (and an employee of the Firm), and Ronald Weiss, among others. For example, in 2011, Ronald Weiss assisted Jamie Weiss and Paul Weiss to create a limited liability company to compete directly against LLC. This LLC was created as a means of improperly transferring LLC's assets.

68. Michael Silver & Co. failed to advise Freed of these breaches of fiduciary duties, and took steps to actively conceal the same from Freed both while he was a manager, and after the date of his dissociation.

69. Without regard to its obligations to Freed, and without Freed's knowledge or consent, Michael Silver & Co. gave Weiss access to its communications with Freed, and withheld from Freed its incriminating communications with Weiss.

70.     Despite Freed's statutory right to access all of the books and records of the Firm, both prior to and after his dissociation, Michael Silver & Co. secretly withheld information requested of it by Freed to conceal its professional negligence.

71.     In an effort to conceal its professional negligence, Michael Silver & Co. knowingly provided Freed with inaccurate and incomplete information about Freed & Weiss' financial statements and records.

72.     Michael Silver & Co.'s negligence did not come to light until it produced documents to Freed in response to a subpoena in March 2014 in litigation against Freed. These documents, although incomplete, had not been made available to Freed until March 2014.

73.     Among other things, Freed did not become aware until March 2014 when Michael Silver & Co. produced documents pursuant to Freed's subpoena that Michael Silver & Co. had altered Freed & Weiss' financial records.

74.     It was not until Michael Silver & Co. produced its records relating to Freed & Weiss that Freed learned that Michael Silver & Co. had facilitated the manipulation and concealment of Firm's profits and finances.

75.     Michael Silver & Co.'s withholding and concealment of information from Freed prevented his discovery of its negligence.

76.     In December 2011, Weiss caused a filing to be made with the Illinois Secretary of state in which he caused the name of Freed & Weiss LLC to be changed to Complex Litigation Group LLC.

77.     But Michael Silver & Co. caused LLC's financial  records to be altered so that it appears as if the change had occurred years earlier.

78.     The December 2011 filing by Weiss also represented that Weiss was the sole member and manager of LLC. Michael Silver & Co. was aware that Paul Weiss' filing misrepresented that Paul Weiss was the sole member and manager of LLC.

79.     Freed did not consent to the December 2011 filing by Weiss, purportedly in the name of LLC, with the Illinois Secretary of State, purporting to change the name of the limited liability company. And Freed did not consent to the putative changes in LLC referenced in the December 2011 filing by Weiss purportedly in the name of LLC, with the Illinois Secretary of State, through which Weiss misrepresented that he was the only member and manager.

80.     In August 2014, Weiss again caused LLC's name to be changed and its member and manager to be changed in response to findings by the Illinois Attorney Registration and Disciplinary Commission (the "ARDC") in which the ARDC, after an evidentiary proceeding, found that Weiss had engaged in a number of acts of sexual battery and dishonesty and recommended that his license be suspended.

## COUNT I
## NEGLIGENCE
### (Improper Treatment of Loans Made By Freed)

81.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 80 as the allegations of paragraph 81.

82.     As the accountants for Freed & Weiss and Freed, Michael Silver & Co. owed a duty of care to the Firm and Freed, in his individual capacity and in his capacity as a manager of the Firm, to provide accounting services with a reasonable degree of care and competence and in accordance with the applicable professional standards, in accordance with the GAAP and in accordance with the standards of the AICPA.

83.    However, throughout the entire time that Michael Silver & Co. was engaged to perform professional accounting services for and on behalf of Freed as an individual and as a manager of Freed & Weiss, those accounting services deviated from GAAP, did not comply with the AICPA Code of Professional Conduct, and fell below the standard of care and professional competence.

84.    The financial records compiled by Michael Silver & Co. during the period it was engaged to provide accounting services on behalf of Freed, Weiss, and the Firm failed to account for the loans made by Freed to the Firm in a manner consistent with the applicable standard of care. These financial records materially misrepresented the financial transactions in which Freed & Weiss had engaged or its failure to pay or otherwise account for monies owed to Freed by the Firm.

85.    The financial records that Michael Silver & Co. prepared failed to account for monies loaned by Freed to the Firm to finance its operations. The loans by Freed to the Firm were not properly recorded or reflected in the financial records prepared by Michael Silver & Co. as liabilities of Freed & Weiss.

86.    To the extent that loans made by Freed to the Firm were repaid by Freed & Weiss, during the period Michael Silver & Co. was engaged to provide accounting services and tax services for and on behalf of Freed and the Firm, the financial records compiled by Michael Silver & Co. failed to account for any such loan repayment to Freed in a manner consistent with the applicable standard of care.  The records compiled and maintained by Michael Silver & Co. concealed that LLC had received loans from Freed as well as the amounts that remained unpaid.

87.    The financial records created by Michael Silver & Co. treated loan repayments by the Firm to Freed as if such payments to Freed were distributions.

14

88.     Michael Silver & Co. booked loan proceeds from Freed to the Firm in 2004 and 2007 to Freed's capital account as if the amounts advanced were capital contributions rather than loans, and then booked loan repayments by the Firm to Freed to Freed's draw account.  Michael Silver & Co.'s improper treatment of loans by Freed to LLC also interfered with Freed's ability as a manager to ensure that distributions made by the Firm complied with the Partnership Agreement and the Act.  This improper booking deviated with the applicable standard of care and resulted in injury to Freed. It also caused LLC's assets and liabilities to be misstated.

89.     Michael Silver & Co.'s improper treatment of loans by Freed to the Firm and repayment by the Firm deviated from the applicable standard of care and caused Freed's taxable income for the years in which the repayments occurred to be overstated.

90.     Michael Silver & Co.'s improper treatment of Freed's loans to the Firm was not apparent in the financial records which it provided to Freed.

91.     Michael Silver & Co.'s negligence in treating loan repayments owed to Freed as income to Freed caused Freed' capital account to be misstated and caused Freed to incur state and federal taxes that he would not have incurred had the loan repayments been accounted for consistent with the applicable standard of care.

92.     This erroneous treatment of loan repayments by Michael Silver & Co. caused Freed's taxable income to be overstated by more than $3,000,000.

93.     Michael Silver & Co.'s improper treatment of loans made by Freed to the Firm and repayment to Freed of those loans caused Freed's income to be overstated throughout the time Michael Silver & Co. was his accountant and caused his state and federal tax liability to be inflated resulting in millions of dollars of overpayments by Freed.

94.     Michael Silver & Co.'s improper treatment of Freed's loans to the Firm and treatment of the repayment of the loans, to the extent that there was repayment, deviated from the applicable standard of care and caused Freed's taxable income for the years in which the proceeds were received to be misstated resulting in millions of dollars of damages to Freed.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

**COUNT II**
**NEGLIGENCE**
**(Failure to Account For Interest on Freed's Loans)**

95.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 80 as the allegations of paragraph 95.

96.     In the performance of its accounting services, Michael Silver & Co. failed to record loans from Freed to the the Firm as a liability on the general ledger or the balance sheet. Michael Silver & Co.'s error in this regard harmed Freed by interfering with his ability to collect the amounts due to him from Freed & Weiss. Further, Michael Silver & Co.'s improper accounting interfered with Freed's ability to perform his obligations as a manager of Freed & Weiss.

97.     In the performance of its accounting services, Michael Silver & Co. failed to record distributions owed Freed from the Firm, damaging Freed's legal rights as a creditor with claims superior to a holder of equity and Michael Silver & Co.'s error in this regard harmed Freed by interfering with his ability to collect the amounts due to him from Freed & Weiss as distributions.

98.     The records Michael Silver & Co. created in connection with the services it was engaged to perform for Freed individually and as a manager of Freed & Weiss failed to account for interest owed on loans made by Freed to the Firm.

99.     The records that Michael Silver & Co. created in connection with the accounting services provided thus were not undertaken in a manner consistent with that required by the applicable standard of care.

100.    Freed & Weiss failed to repay interest on the loans made to it by Freed.

101.    Michael Silver & Co.'s mischaracterization of the loans made by Freed to LLC or its partial repayment of those loans was not apparent in the financial records which it provided to Freed.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT III
## NEGLIGENCE
### (Failed To Properly Account For Advances By Freed)

102.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 80 as the allegations of paragraph 102.

103.    In the performance of its accounting services, Michael Silver & Co., failed to treat advances made by the Firm to Weiss as assets on the books of the LLC.

104.    Michael Silver & Co. improperly recorded advances that Weiss caused himself to receive from LLC to be booked as draws rather than loans.

105.    Because over $2,000,000 was advanced to Weiss through his draw account, Michael Silver & Co.'s negligence impaired Freed's ability as a manager of Freed & Weiss to ensure that distributions were not being made in breach of the Illinois Limited Liability

Company Act or to confirm that distributions were made in adherence to the terms of the Partnership Agreement.

106. Michael Silver & Co.'s negligence in compiling LLC's financial records concealed distributions to Weiss in violation of the Illinois Limited Liability Company Act, Partnership Agreement, and in a manner that had an adverse financial consequence to Freed individually.

107. Michael Silver & Co.'s negligence precluded Freed from preventing Weiss' embezzlement from the Firm and precluded Freed from receiving distributions due to him on a timely basis resulting in damages to Freed.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (Failed to Prepare Accurate Financial Statements)

108. Plaintiff incorporates by reference the allegations of paragraphs 1 through 107 as the allegations of paragraph 108.

109. Beginning in 2002, Michael Silver & Co. was engaged to compile and prepare Freed & Weiss' financial records and statements for use by its managers and members.

110. Michael Silver & Co. represented that the financial statements it was engaged to prepare for use by the Firm's managers would be compiled in accordance with the Statements on Standards for Accounting and Review Services issued by the AICPA.

111. Michael Silver & Co. was aware at the time it was engaged through August 2012 that Freed & Weiss' managers would reasonably rely on the financial statements that it was engaged to prepare on their behalf.

112.    Beginning after it was engaged in 2002 through September 2011, Michael Silver & Co. provided what were represented were accurate 'financial statements' to Freed in his capacity as a manager and member of LLC each year at the same time that it provided the tax returns for Freed & Weiss for his signature.

113.    Michael Silver & Co. was aware that Freed & Weiss' managers sought the compilation of the Firm's financial statements for use in meeting their responsibilities as managers of Freed & Weiss including so that they could ensure that the Firm met its obligations under the Act and that its finances were managed in conformity with the Partnership Agreement.

114.    Freed relied upon the documents identified to him by Michael Silver & Co. as financial statements that Michael Silver & Co. provided to him in the performance of his responsibilities as a manager and member of Freed & Weiss.

115.    Freed's reliance upon the financial statements that Michael Silver & Co. provided to him was reasonable.

116.    Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed were false, inaccurate and misleading.

117.    Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed failed to properly account for the loans that Freed made to LLC.

118.    Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed failed to properly account for the distributions by the Firm to Freed reporting loan repayments as if they were distributions to him by the Firm.

119.    Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed failed to properly represent Freed's capital account.

19

120. Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed understated Freed's capital account.

121. Michael Silver & Co., knew or should have known that the financial statements that it prepared and provided to Freed failed to properly represent Weiss's capital account.

122. Michael Silver & Co. knew or should have known that the financial statements that it provided to Freed overstated Weiss's capital account.

123. Freed reasonably relied upon the financial statements that Michael Silver & Co. prepared and provided to him in making decisions as a manager of Freed & Weiss, including decisions relating to the financing of the Firm's operations as well as managing its expenses of the firm and the expenses associated with the cases in which it had been engaged as counsel.

124. Freed was damaged as a consequence of his reliance on the financial statements that Michael Silver & Co. prepared and provided to him.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### (Failed To Prepare Accurate K-1s)

125. Plaintiff incorporates by reference the allegations of paragraphs 1 through 108 as the allegations of paragraph 125.

126. Beginning in 2002, Michael Silver & Co. was engaged to provide accounting and tax services including preparation of tax returns including form K-1s for Freed & Weiss' managers, members, and Freed and Weiss individually.

127. Michael Silver & Co. represented that the tax returns including the form K-1s would be prepared and maintained in accordance with GAAP.

128.    Each year of its engagement, Michael Silver & Co. provided Freed with tax returns including a form K-1 for himself and for Weiss.

129.    The tax returns and form K-1s provided to Freed by Michael Silver & Co. were materially false including in that they mischaracterized his income and contribution to Freed & Weiss.

130.    Michael Silver & Co. was aware that Freed would reasonably rely upon the tax returns including the form K-1s that it prepared in performing his responsibilities as a manager of Freed & Weiss.

131.    Michael Silver & Co. was aware that Freed would rely upon the tax returns including the form K-1s that it prepared to pay his taxes for income attributed to him in connection with Freed & Weiss.

132.    Freed reasonably relied upon the tax returns including the form K-1s that Michael Silver & Co. prepared and maintained in performing his responsibilities as a manager of Freed & Weiss as well in making his decisions concerning the financing of the Firm's operations.

133.    Freed relied upon the tax returns including the form K-1s that Michael Silver & Co. for payment of the taxes in connection with income attributed to him from Freed & Weiss.

134.    Freed was damaged as a consequence of his reliance on the K-1s that Michael Silver & Co. prepared and provided to him.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co. in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT VI
## NEGLIGENCE
### (Failed To Maintain Accurate Capital Accounts)

135.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 108 as the allegations of paragraph 135.

136.    In the performance of its accounting services and tax services on behalf of Freed, individually and as a manager of LLC Michael Silver & Co. failed to ensure that the ending balance of Freed and Weiss's capital accounts in the financial statements agreed with the amounts reported on the tax returns.

137.    In the performance of its accounting services and tax services on behalf of Freed, individually and as a manger of the Firm, Michael Silver & Co. failed to account for Freed's capital account in the same manner that it accounted for Weiss's capital account.

138.    For example, in contrast with its treatment of Weiss's capital account, the year-end balances of Freed's capital account is not the same as the beginning balances for the following year.  However, the year-end balances of Weiss's capital accounts are the same as the beginning balances for the following year.

139.    In the performance of its accounting services and tax services on behalf of Freed individually and as a manager of the LLC, Michael Silver & Co. never zeroed out the draw accounts of Freed and Weiss at the end of the year.  This caused the true capital account balances to be misstated.

140.    In the performance of its accounting services and tax services on behalf of Freed individually and as a manager of the Firm, Michael Silver & Co., consistently allocated profits

between Freed and Weiss on a fifty/fifty basis and not in conformity with Partnership Agreement that required the allocation to be made on a fifty-three/forty-seven percent basis.

141.    Each of the aforesaid actions by Michael Silver & Co. are deviations from the applicable standard of care.

142.    As a consequence of the aforesaid actions by Michael Silver & Co., Freed & Weiss paid Weiss millions of dollars that were actually due to Freed.

143.    Each of the aforesaid actions by Michael Silver & Co. caused Freed to be damaged including causing him to incur millions of dollars taxes in excess of those due from him and to lose out on millions of dollars on distributions due to him.

144.    Each of the aforesaid actions by Michael Silver & Co. were concealed from Freed.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT VII
## BREACH OF FIDUCIARY DUTIES
### (Misstating Financial Records)

145.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 80 as the allegations of paragraphs 145.

146.    In reliance on Michael Silver & Co.'s professed expertise concerning accounting, Freed placed his trust in the accuracy of the financial reporting that he received from it.

147.    In particular, Freed relied up on Michael Silver & Co. to properly account for loans, loan repayment, and to ensure that loans, loan repayments, expenses and profits were accounted for consistent with Partnership Agreement and the applicable standard of care.

148.     However, Michael Silver & Co. failed to alert Freed that at the time it was providing accounting services to him individually and in his capacity as a manager of Freed & Weiss, that Michael Silver & Co was assisting Weiss to obtain payments from the Firm that were not authorized under the terms of Partnership Agreement.

149.     Michael Silver & Co. did not alert Freed to the fact that Weiss was manipulating the Firm's finances by causing money to be improperly held in IOLTA accounts before the funds were transferred to the Firm at times designed to suit Weiss.

150.     Michael Silver & Co.'s manipulation of LLC's financial records was not apparent in the financial records that it provided to Freed.

151.     Michael Silver & Co.'s breaches caused damage to Freed by causing his income from the Firm to be overstated, by causing him to be deprived of compensation that was due to him, and by concealing disbursements from Freed & Weiss that were not authorized under Partnership Agreement.

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial and for such other relief as this Court deems just.

## COUNT VIII
## FRAUD

152.     Freed incorporates the allegations set forth in paragraphs 1 through 80 and 145 through 151 above for its allegations of this paragraph 152.

153.     Michael Silver & Co. knew that it failed to provide its services on behalf of Freed, individually and as a manager of the Firm, with a reasonable degree of care and competence and in accordance with the applicable professional standards and failed to provide those services in accordance with the GAAP and the standards of the AICPA.

154.     Michael Silver & Co. knew that it was improper to record loans from Freed to LLC as a liability on the general ledger or the balance sheet.

155.     Michael Silver & Co. knew that it was improper to book proceeds from Freed's loans to the Firm to Freed's draw account.

156.     Michael Silver & Co. knew that it was improper to book the Firm's repayments of loans made to it by Freed to Freed's draw account.

157.     Michael Silver & Co. knew that it was improper to book the proceeds of loans made to LLC by Freed in 2004 and 2007 to Freed's capital account and to book LLC's loan repayments to Freed to Freed's draw account when the loans were liabilities of LLC to Freed and the repayments were repayments of liabilities.

158.     Michael Silver & Co. knew that it should have treated advances made to Weiss as assets of LLC and liabilities of Weiss on LLC's books.

159.     Michael Silver & Co. knew that it was improper for the ending balance of Freed and Weiss's capital accounts in the financial statements not to agree with the amounts reported on the tax returns.

160.     Michael Silver & Co. knew that Freed's capital account should be treated in the same manner as Weiss's capital account and that the year-end balances of Freed's capital account should match the beginning balances for the following year.

161.     Michael Silver & Co. knew that loans from Freed to the Firm and advances from the Firm to Weiss should be reflected on the Firm's balance sheet as liabilities, in the case of loans to LLC anf assets in the case of loans from LLC to Weiss.

162.     Michael Silver & Co. knew from Partnership Agreement that profits should be allocated between Freed and Weiss on a fifty-three/forty-seven percent basis and it was improper not to do so.

163.     Michael Silver & Co. knew that at the end of the year the draw accounts of Freed and Weiss should be zeroed out and that it was improper not to do so as it caused the true capital account balances to be misstated.

164.     Michael Silver & Co. was aware that Freed & Weiss concealed funds from Freed in the IOLTA accounts in order to manipulate its finances and taxable income.

165.     Michael Silver & Co. was aware that it was improper for it to manipulate Freed & Weiss' financial records retroactively without disclosing that it had altered the books and records.

166.     Michael Silver & Co. intended for Freed, in his individual capacity as well as in his capacity as a manager of Freed & Weiss, to rely upon the accuracy of the financial reporting and tax documents it created for him and for the Firm.

167.     Freed, for himself and in his capacity as a manager of Freed & Weiss, relied on Michael Silver & Co. to provide their accounting services with a reasonable degree of care and competence and in accordance with the GAAP and the standards of the AICPA.

168.     Michael Silver & Co.'s actions concealed fraud by Weiss.

169.     Michael Silver & Co.'s failures to provide their accounting services with a reasonable degree of care and competence and in accordance with GAAP and the standards of the AICPA damaged Freed in that, among other things, Freed was caused to pay taxes on income that he did not receive, was deprived of income that was due to him, and facilitated theft by Weiss from the Firm and the concealment of that theft.

26

WHEREFORE, Freed asks for judgment in his favor and against Michael Silver & Co., in an amount to be proven at trial, for punitive damages and for such other relief as this Court deems just.

ERIC D. FREED

By:      /s/ David B. Goodman
                One of his Attorneys

David B. Goodman - dbg@greensfelder.com
Thadford A. Felton - taf@greensfelder.com
Courtney A. Adair - cadair@greensfelder.com
Greensfelder, Hemker & Gale, P.C.
200 West Madison Street, Suite 2700
Chicago, IL  60606
(312) 419-9090
Firm ID No.:  45175